**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patrick Henry EARLEY, Defendant-
Appellant.**

**No. 72–1803.**

United States Court of Appeals,
Tenth Circuit.

July 20, 1973.

Stephen K. Lester, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for plaintiff-appellee.

Peter H. Ney, Englewood, Colo., for defendant-appellant.

Before PHILLIPS, HILL and SETH, Circuit Judges.

ORIE L PHILLIPS, Circuit Judge.

On October 15, 1971, a 12-count indictment was returned in the United States District Court for the District of Kansas against Patrick Henry Earley and Wayne E. Porter.

Count I charged that Earley and Porter, together with 10 other persons who were named as coconspirators, but not named as defendants, were charged with conspiracy to commit offenses against the United States. Count I further charged that the object, purpose and intent of the conspiracy was to "travel in and cause the travel and use of the facilities of interstate commerce with intent to:

"(a) Distribute the proceeds of an unlawful activity, to wit: arson, in violation of the laws of the State of Kansas, in which state such acts of arson were committed;

"(b) Commit crimes of violence to further the aforesaid unlawful activity; and

"(c) Otherwise promote, manage, establish, carry on, and to facilitate the promotion, management, establishment, and carry-

ing on the unlawful activity of arson."

We think it will be helpful if we set out the provisions of 18 U.S.C.A. § 1952, as follows:

"§ 1952. *Interstate and foreign travel or transportation in aid of racketeering enterprises*

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, * * * with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means * * * (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

Count III charged that Earley on or about August 11, 1968, traveled "in interstate commerce from Wichita, Kansas, to Oklahoma City, Oklahoma, with intent to distribute the proceeds of an unlawful activity, to wit: arson, in violation of the laws of the State of Kansas, wherein the arson was committed, and to carry on and facilitate the carrying on of the unlawful activity of arson, and did thereafter distribute the proceeds of the unlawful activity of arson, and did thereafter at Wichita, Kansas, continue to carry on the unlawful activity of arson, in violation of 18 U.S.C. 1952."

Count IV charged that Earley on or about November 17, 1968, made a fire-arm, "to wit: a destructive device as defined by 26 U.S.C. 5845(f), without having first filed with the Secretary of the Treasury or his delegate to make and register the destructive device on the form prescribed by the Secretary or his delegate, as required by 26 U.S.C. 5822(a), in violation of 26 U.S.C. 5861(f)."

Count V charged Earley with possession on or about November 17, 1968, of "a destructive device as defined by 26 U.S.C. 5845(f), which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. 5861(d)."

Count VII charged that Earley on or about June 30, 1969, "did transport in interstate commerce from Duncan, Oklahoma, to Wichita, Kansas, a firearm, to wit: a destructive device as defined by 26 U.S.C. 5845(f), which had not been registered to him in the National Firearms Registration and Transfer Record as required by Chapter 53 of the Internal Revenue Code of 1954, as amended, in violation of 26 U.S.C. 5861(j)."

Count VIII charged that Earley on or about July 1, 1969, possessed "a firearm, to wit: a destructive device as defined by 26 U.S.C. 5845(f), which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. 5861(d)."

Count IX charged that Earley traveled in interstate commerce "from Oklahoma City, Oklahoma, to Wichita, Kansas, with intent to carry on and facilitate the carrying on of an unlawful activity, to wit: arson, in violation of the laws of the State of Kansas, wherein the arson was committed, and did thereafter at Wichita, Kansas, carry on the unlawful activity of arson by bombing Razook's Thriftway Market, in violation of 18 U.S.C. 1952."

Count X charged that Earley traveled "in interstate commerce from Wichita, Kansas, to Oklahoma City, Oklahoma, with intent to distribute the proceeds of an unlawful activity, to wit: arson, in violation of the laws of the State of

Kansas, wherein the arson was committed, and to facilitate the carrying on of the unlawful activity of arson, and did thereafter at Oklahoma City, Oklahoma, distribute the proceeds of the unlawful activity of arson, in violation of 18 U.S.C. 1952."

Earley was convicted on Counts I, III, IV, V, VII, VIII, IX, and X, and found not guilty on Counts II, VI, and XI. Therefore, we have not set out what Counts II, VI, and XI charged.

Count XII of the indictment charged that Wayne E. Porter traveled "in interstate commerce from Wichita, Kansas, to Perry, Oklahoma, with intent to distribute the proceeds of an unlawful activity, to wit: arson, in violation of the laws of the State of Kansas, wherein the arson was committed, and to carry on and facilitate the carrying on of the unlawful activity of arson, and did thereafter distribute the proceeds of the unlawful activity of arson, in violation of 18 U.S.C. 1952."

The case came on for trial on May 1, 1972. Earley appeared in person and by his counsel, Archibald Hill. Porter appeared in person and by his counsel, William C. Farmer and Everett C. Fettis. Mr. Hill informed the court that his home and his automobile had been burglarized early that morning, and that the papers he had prepared for use during the trial had been taken. He moved for a further continuance, which was denied.

The original transcript of the record of the trial consists of 10 volumes, which were filed in lieu of an appendix. If, instead of filing all of the original record, an appendix had been filed, much immaterial matter could have been omitted, and it would have greatly reduced the work of the court.

On the fifth day of the trial, out of the sight and hearing of the jury, Porter pleaded guilty to Count I, the conspiracy count, and Count XI was dismissed as to him and Count XII was dismissed.

After such pleas and dismissals, the jury were returned to the box and the court advised them that Mr. Porter had entered a plea of guilty; that he had conflicting engagements for Monday, May 8, 1972, and that the trial would be recessed until Tuesday, May 9, 1972.

The court very carefully gave the jury the precautionary instruction usually given when there is a recess of a trial.

On Tuesday, May 9, 1972, the trial was resumed, and immediately after the jury had entered the box, the trial judge gave them this further precautionary instruction:

"The jury will recall that immediately preceding the recessing of the trial last Friday afternoon the Court at that time advised you that the Defendant Wayne Porter had entered a plea of guilty to count one of the indictment, that is, the conspiracy count, before the Court and that the Court had accepted it.

"I further specifically instruct you at this time that this jury may not in any way, in the smallest degree, consider the plea of the defendant Porter as creating any inference or aspect of guilt of the defendant Patrick Henry Earley as to the conspiracy charge set forth in count one of the indictment to which the defendant Porter has entered his plea of guilty, or as to the guilt of the defendant Patrick Henry Earley on any other count of the indictment with which he is charged in this case.

"The jury is reminded that the indictment charged numerous individuals, specifically ten persons, with being joint conspirators, and the admission of the Defendant Porter, as one of the alleged co-conspirators, cannot be considered in determining the guilt or innocence of the defendant Patrick Earley on any and all counts. You must consider only evidence produced in this courtroom from the witnesses in determining the guilt or innocence of the defendant Earley on each count upon which he is charged."

The trial judge reiterated the above-quoted instruction in his general charge to the jury.

■ The evidence clearly warranted the jury in finding beyond a reasonable doubt the following facts:

Porter was the owner of several grocery stores situated in Wichita, Kansas. Three of such stores, respectively, known as University IGA Store, Grove IGA, and 21st Street IGA, were located in the northeast section of Wichita. Porter hired Earley, then a resident of Oklahoma, to set on fire or cause to be set on fire during the period extending from July 1968 through July 1969, and during a time of racial unrest in Wichita, the University IGA Store and two stores owned by Porter's competitors. Earley, in turn, hired other persons to set on fire or assist him in setting on fire such three stores.

Such three stores were, in fact, set on fire by persons so hired by Earley, or were set on fire by Earley with the assistance of such other persons. Thus, three acts of arson were committed by Earley, as that offense is defined by the laws of Kansas.

Also, there was ample evidence to justify the jury in finding beyond a reasonable doubt that Earley committed the offenses charged in Counts I, III, IV, V, VII, VIII, IX, and X of the indictment. Earley does not challenge the sufficiency of the evidence adduced to warrant the jury in so finding, but bases his appeal on other alleged errors. Hence, we deem it unnecessary to set out the evidence at length.

Counsel for Earley contends that the trial court erred in overruling his oral motion for a continuance, made when the case was called for trial on May 1, 1972, on his stated ground that his automobile was broken into the preceding night and his briefcase, containing "all his notes, minutes, files, and questions of law and questions to be raised" at the trial, was stolen.

The indictment was returned on October 15, 1971. The arraignments were set for November 15, 1971. The history of the case from that day on reflects one postponement after another, made at the request of Archibald Hill, counsel for Earley, up to and including his motion for a continuance, made on May 1, 1972, on the eve of the trial.

At Hill's request, the arraignments were postponed from November 15, 1971, to December 6, 1971. On the latter date, Earley was arraigned and entered pleas of not guilty as to Counts I to XI, inclusive, and the trial court stated that the case would be set for trial at some date in January 1972. Also, on that date, Hill was given 10 days by the court within which to file motions. On December 16, 1971, Hill filed a motion to extend the time for the filing of such motions until December 21, 1971, because of the fact he was engaged in a session of the Oklahoma Legislature, of which he was a member. On January 10, 1972, an order was made denying the last-mentioned motion. At that time, Hill had not filed any of such motions. Thereafter, argument on such motions was continued by the court until January 17, 1972, because Earley was in jail in Oklahoma on state charges. On January 17, 1972, Hill did not appear, and hearing on such motions was continued by the court until April 4, 1972.

The trial of the case was set for April 18, 1972, but on that date the court was informed that Hill was ill and in a hospital, and the court continued the trial until May 1, 1972.

So far as the record discloses, Hill filed no motions, except for postponements, until May 1, 1972, when he filed a motion for a severance, and on November 12, 1971, when he filed a motion to suppress physical evidence and to suppress evidence of a confession.

■ The granting of a motion for a continuance rests in the discretion of the trial court, and the denial thereof by such court will not be set aside on ap-

peal in the absence of a clear showing of an abuse of discretion.[1]

■ The records of the trial show that Hill conducted a vigorous and competent defense of Earley, and there is nothing to indicate that he suffered any handicap by his claimed loss of his "notes, minutes, files, and questions of law and questions to be raised" at the trial. We conclude that the court did not abuse its discretion in overruling such motion for a continuance.

■■ Earley contends that the trial court erred in denying his motion for a severance. In passing on such a motion the trial court has a wide discretion, and the burden is on the movant to show that he suffered sufficient prejudice from the denial of his motion to warrant the appellate court in finding that the trial court clearly abused its discretion.[2]

As a basis for his claim that there was an abuse of discretion, Earley asserts that had there been a severance he would have avoided the prejudice which resulted to him:

(1) When the trial court advised the jury on the fifth day of the trial that Porter had pleaded guilty to the conspiracy count, and

(2) When evidence was adduced at the trial of other criminal acts on the part of Earley.

Since Earley asserts (1) and (2) as separate grounds of error, and since all three claims of error are related, we will proceed to consider all of them at this point.

First, as to the statement by the court to the jury that Porter had pleaded guilty to the conspiracy count. On the fifth day of the trial, after the jury had retired to the jury room, out of the sight and hearing of the jury Porter entered such plea, and Count XI, which charged Earley and Porter jointly with an offense, was dismissed as to Porter, and Count XII, which charged an offense only by Porter, was also dismissed.

Before recessing the trial, which had begun on May 1, 1972, on Friday, May 5, 1972, the court advised the jury that Porter had pleaded guilty to the conspiracy count. He then gave the usual precautionary instruction to be observed by the jury during the recess of the trial, and advised them that he had made prior commitments for Monday and that the trial would be recessed until Tuesday morning, May 9, 1973.

The trial, as to Earley, continued from May 9 to May 15, 1972.

■ It has long been the law in this circuit and in other circuits that the trial court may inform the jury that a codefendant has entered a plea of guilty, provided the jury is clearly instructed that such a plea cannot be considered as evidence of the guilt of the remaining defendant or defendants.[3]

■ The instruction given by the court on May 9, 1972, and reiterated in his general charge, fully advised the jury that such plea could not be taken or considered in any way as evidence against Earley, and that they should determine his guilt or innocence on each

1. United States v. Fairchild, 10 Cir., 435 F.2d 972, 973; United States v. Harris, 10 Cir., 441 F.2d 1333, 1335–1336; Johnson v. United States, 8 Cir., 291 F.2d 150, 153, cert. denied 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80; United States v. Hartenfeld, 7 Cir., 113 F.2d 359, 362, cert. denied 311 U.S. 647, 61 S.Ct. 30, 85 L.Ed. 413; United States v. Eagleston, 10 Cir., 417 F.2d 11, 14.

2. Carpenter v. United States, 10 Cir., 463 F.2d 397, 399; United States v. Mallory, 10 Cir., 460 F.2d 243, 248; United States v. Jorgenson, 10 Cir., 451 F.2d 516, 523, cert. denied 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793; United States v. Harris, 10 Cir., 441 F.2d 1333, 1336; United States v. Rogers, 10 Cir., 419 F.2d 1315, 1317.

3. Wood v. United States, 8 Cir., 279 F.2d 359, 363; United States v. Aronson, 2 Cir., 319 F.2d 48, 52; Fahning v. United States, 5 Cir., 299 F.2d 579, 580; United States v. Soares, 10 Cir., 456 F.2d 431, 433; Jiron v. United States, 10 Cir., 306 F.2d 946, 947; Hines v. United States, 10 Cir., 131 F.2d 971, 974.

count by which he was charged with an offense solely on the evidence adduced on the witness stand.

The reasons for advising the jury that a codefendant has pleaded guilty, and for the instruction given, are obvious.

Porter did not further appear during the several days the trial continued as to Earley. Were not the jury advised and instructed, they might well conclude that Porter had pleaded guilty, and give an erroneous effect to that fact in passing on the guilt or innocence of Earley. In fact, the procedure followed and the instruction given might well have redounded to Earley's benefit, instead of his prejudice.

We hold that Earley was not prejudiced by the procedure followed with respect to Porter's plea.

■ We turn now to Earley's claim that evidence of other crimes committed by him was erroneously admitted, and conclude that such claim is not well founded.

In a number of instances, where a witness testified with respect to other crimes committed by Earley, the testimony was brought out by Earley's counsel, Hill, on cross-examination of the Government's witness, Virginia McCool. She would have been called as a witness by the Government against Earley, even though there had been a severance.

In other instances, testimony was part of the whole story, only part of which was brought out by Hill in his cross-examination.

One matter with respect to which counsel for Earley complains occurred in the absence of the jury and could not have done him any harm. Another was a repetition brought out by counsel for Porter of matters theretofore brought out by Hill, counsel for Earley, in his cross-examination of the witness. Moreover, the court instructed the jury to disregard any evidence adduced which tended to show that Earley had been guilty of other crimes than those charged against him in the indictment.

■ In Count IV, Earley was charged with making a destructive device, without first having filed a written application to make and register such a device. In Count V, Earley was charged with the possession of the unregistered device he had made. The evidence established that Earley made and possessed the device on November 17, 1968, as charged in the indictment.

In 1968, Congress amended the National Firearms Act and provided that it should be cited as the "National Firearms Act Amendments of 1968." Such amendments became effective on November 1, 1968. The Congressional intent of the National Firearms Act Amendments was to correct the constitutional deficiencies of the former Act, which the Supreme Court held to be unenforceable in Haynes v. United States, 390 U. S. 85, because it required registration almost exclusively by those in illegal possession of a weapon and made this information available for prosecution purposes. The 1968 amendments avoided the problem by extending the registration to all possessors of the weapons, legitimate or otherwise, and "by providing that registration information may not be used directly or indirectly to prosecute a natural person for an offense prior to or concurrent with his registration."

Since the acts charged in Counts IV and V occurred after November 1, 1968, a prosecution for such offenses was legal.

Accordingly, the judgment and sentences of the court on the counts on which Earley was found guilty are hereby affirmed.