IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2008

## STATE OF TENNESSEE v. BRIAN CHARLES LADUE

**Appeal from the Criminal Court for Knox County**
**No. 81180    Ray L. Jenkins, Judge**

---

**No. E2006-02560-CCA-R3-CD - Filed July 21, 2008**

---

Appellant, Brian Charles LaDue, was indicted by the Knox County Grand Jury for attempted second degree murder and aggravated assault. After a jury trial, Appellant was found guilty of aggravated assault. As a result, the trial court sentenced Appellant as a Range I, standard offender to six years in incarceration. After the denial of a motion for new trial, Appellant seeks review of his sentence on appeal. We determine that Appellant has failed to show that plain error review of his sentence is warranted or that the trial court erred by denying probation. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Julie A. Rice, Knoxville, Tennessee, for the appellant, Brian Charles LaDue.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The victim, Sherry Morgan,[1] owns a home located at 1728 Woodrow Drive in Knoxville. She met Appellant in the fall of 2000, and they married on February 15, 2002. They lived together at the home on Woodrow Drive. Shortly after they got married, Appellant started traveling quite a

---

[1] At the time of the incident, Ms. Morgan was married to Appellant and went by the name Sherry LaDue. At the time of trial, Appellant and Ms. Morgan had gotten a divorce.

bit for work. He was only home on the weekends. In December of 2003, the victim moved to West Virginia to help her ailing father with his business. Appellant visited her in West Virginia on the weekends. The victim sporadically went to Knoxville to check on the house and perform routine maintenance.

The victim described the marriage as "bad." She claimed that Appellant was often verbally abusive to her during their relationship. The victim filed for divorce on June 2, 2004.

On July 22, 2004, the victim traveled to Knoxville to check on her house. She and her dogs arrived at around 11:00 p.m. At around 2:30 in the morning, the dogs started barking. The victim looked outside and saw Appellant at the front door. In the three months prior to July 23, 2004, the victim had seen Appellant one time, for a shopping trip. On July 23, 2004, Ms. Morgan confronted Appellant and told him to leave. The victim claimed that Appellant took her cell phone and knocked her down. The victim allowed Appellant to stay in the guestroom of the house that night.

The next morning, the victim asked Appellant to leave. Appellant offered to get her breakfast and take her dogs to get them groomed. The victim declined breakfast. She allowed Appellant to take the dogs to the groomer. The victim explained that Appellant owed her money for damage that he had done to her car with a key. Appellant wrote her a check for the money but later put a stop payment on the check. The victim felt that allowing Appellant to take the dogs to get groomed was a way of getting some of her money back from Appellant. The victim also stated that Appellant gave her $600 in cash.

Ms. Morgan and Appellant were in and out of the house during the day on July 24th. Appellant brought the victim lunch and eventually returned her cell phone. They talked about the divorce and the fact that Appellant was planning to move to Florida. During the day, the victim got telephone calls from her father, several friends, and Keith Godfrey. The victim explained that Mr. Godfrey was a friend that she had known since high school. The victim denied telling Appellant about sexual encounters with Mr. Godfrey and denied telling Appellant that Mr. Godfrey was a better sexual partner than Appellant.

Appellant asked Ms. Morgan to go out to dinner with him that night. She initially declined but later agreed to go to dinner. The victim and Appellant ate at Outback Steakhouse, where they each had several alcoholic drinks. The pair then went to Smokey's bar. They both consumed more alcoholic beverages at the pub. Appellant was on the phone several times that night. The victim thought that he might be checking her voicemail to see if Mr. Godfrey had called.

When Ms. Morgan and Appellant returned to the house, Appellant followed her to the door. The victim opened the door and told Appellant that he needed to leave. Appellant then pushed the victim through the door and punched her in the nose. The victim stated that her nose immediately started bleeding. Appellant continued to beat the victim about the head and face. Sometime during the encounter, the contents of the victim's purse spilled onto the floor. She was somehow able to

grab her car keys and activate her car alarm. The victim attempted to bury her head in the carpet to protect herself. She thought that Appellant hit her more than five times.

When the car alarm sounded, Appellant ran outside to turn it off. The victim ran outside and across the street. Appellant chased her and grabbed her by the hair, while hitting her in the face with a closed fist. The victim was lying on the street and Appellant continued to hit her at least ten times. She described the beating as painful and stated that she even lost control of her bladder during the attack. The victim eventually lost consciousness. When she awoke, Appellant had stopped hitting her. She was able to crawl into her front yard and tried to yell for help. At that point, her neighbor arrived and called for help.

Officer Rhett Carter of the Knoxville Police Department responded to a domestic disturbance call at 1900 Woodrow Drive at around 2:00 a.m. on July 24, 2004. When he arrived at the residence, he spoke with Ed Harris, who directed him to Sherry Morgan's residence at 1728 Woodrow Drive. When Officer Carter arrived at the residence, he found Ms. Morgan lying on the floor inside the house. According to Officer Carter, the victim had "serious injuries to her face." It appeared that she had been severely beaten and there was "quite a bit of blood" in the house in both the bathroom area and near the front door. Officer Carter called emergency personnel to treat the victim. The victim informed Officer Carter that her husband had beaten her. By the time the police arrived, the victim's eyes were swollen shut.

The victim was transported to the hospital and later received treatment in West Virginia. According to the victim, her eyes remained swollen for eight or nine days and were bloodshot until October. She received eight or nine stitches in her right ear and was unable to hear for about eight days. The victim claimed that there was permanent nerve damage to her face that manifested itself in numbness from the middle of the left side of her mouth to the center of her left cheek. The victim later had reconstructive surgery on her right "orbital." The victim stated that she was unable to work until September 8, 2004.

Officer Roger Soloman also responded to the call on July 24, 2004. Officer Solomon searched the surrounding area for Appellant but was unable to find him. He spoke with the victim and eventually located Appellant in his vehicle about a mile away from the residence. Appellant was inside his vehicle and appeared to be unconscious. Officer Solomon requested back-up. The vehicle was running. When other officers arrived on the scene, they opened the passenger door of the vehicle. At that time, Appellant acted as if he was going to drive away or put the car in gear.

Officer Solomon described Appellant as disheveled. Appellant had blood stains and abrasions on the knuckles of both of his hands and had blood on his clothing. Officer Solomon suspected that Appellant was intoxicated.

Appellant took the stand in his own defense. He testified that he was married to the victim and that they lived in her home in Knoxville. Appellant stated that the victim's description of their marriage was accurate. Appellant stated that his frequent travel put a strain on their relationship.

-3-

After the victim went to stay with and assist her father in West Virginia, Appellant visited her there on most weekends. Appellant noted Mr. Godfrey's frequent presence and claimed that he played a role in the dissolution of their marriage.

Appellant did not think that the victim would be at the residence on the evening of July 23, 2004. Appellant stated that after the victim told him to leave, the two talked for about an hour while Appellant "rubb[ed] her leg and, you know rubb[ed] her butt . . . just talking in general." Appellant tried to "sweet talk" the victim into sleeping with him, but the victim told Appellant to sleep in the other room.

The next morning, Appellant took the victim's dogs to the groomer. When he returned to the residence, Appellant and the victim talked. Appellant left for a while to go get the victim a six-pack of beer. When he returned, the victim confronted him about the money that he owed her, and they talked about getting counseling and the future of their relationship. Appellant claimed that the victim said several things that hurt his feelings.

Appellant corroborated the victim's story about the events of the early evening. The two went to dinner at Outback Steakhouse and then proceeded to Smokey's bar. According to Appellant, both he and the victim consumed alcoholic beverages. Appellant acknowledged that he checked the victim's voicemail several times while they were out that night.

The last thing that Appellant remembered from that night was talking on the phone while in the bar. He did not remember driving home or assaulting the victim. Despite his inability to remember the events of the evening, Appellant did not deny that he assaulted the victim. His next memory was waking up in the detention facility.

At the conclusion of the jury trial, the jury found Appellant not guilty of attempted second degree murder but guilty of aggravated assault. The trial court subsequently held a sentencing hearing in which the court sentenced Appellant as a Range I standard offender to six years in incarceration. Appellant filed a motion for new trial in which he argued that the trial court: (1) erred in denying a motion to exclude photographs; (2) erred in denying the motion for judgment of acquittal on aggravated assault; (3) erred in denying probation or split confinement; and (4) erred in sentencing Appellant to a six-year sentence. The trial court denied the motion for new trial. Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant contends that the trial court erred in sentencing him to a six-year sentence. Specifically, he argues that the trial court "erroneously enhanced his sentence to the maximum in the range by considering factors other than his prior criminal history in violation of his Sixth Amendment rights." The State agrees that the trial court relied on enhancement factors that were neither admitted by Appellant nor found by a jury. However, the State contends that Appellant is limited to plain error review of his sentence due to his failure to object on Sixth Amendment

-4-

grounds at sentencing. As a result, the State argues, Appellant is not entitled to relief because his prior convictions alone justified the enhancement of his sentence to six years.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).[2]

In the case herein, Appellant was convicted of aggravated assault, a Class C felony. In sentencing Appellant, the trial court determined that Appellant had a previous history of criminal convictions in addition to those necessary to establish the range; that Appellant treated the victim with exceptional cruelty during the commission of the offense; that the personal injuries inflicted on the victim were particularly great; and that Appellant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(1), (5), (6), & (10). The trial court found that no mitigating factors applied to Appellant.

Recently, in response to *Cunningham v. California*, 549 U.S. 270 (2007), the Tennessee Supreme Court issued an opinion on remand from the United States Supreme Court in *State v.*

---

[2]In response to *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee Legislature amended Tennessee Code Annotated section 40-35-210. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006). This amendment became effective on June 7, 2005. The legislature also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. In addition, if a defendant committed a criminal offense on or after July 1, 1982 and was sentenced after June 7, 2005, such defendant can elect to be sentenced under these provisions by executing a waiver of their ex post facto protections. *Id.* Appellant herein committed the offenses on July 23, 2004, and was sentenced on October 26, 2006. We have found no such waiver executed by Appellant in the record herein. Thus, the amendment to Tennessee Code Annotated section 40-35-210 does not apply to Appellant.

*Gomez*, 239 S.W.3d 733, 737 (Tenn. 2007) ("*Gomez II*") that affects our review of sentencing issues, specifically as to the application of enhancement factors to determine a defendant's sentence. On initial review of the issues in *State v. Gomez*, 163 S.W.3d 632, 650 (Tenn. 2005), which was filed on April 15, 2005, the court concluded that the defendants were limited to plain error review of their sentencing claims regarding the Sixth Amendment due to their failure to preserve the issues for plenary review. In *Gomez II*, the court adhered to its decision that the defendants had waived plenary appellate review of their sentencing claims but determined that in light of the *Cunningham* decision, a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than the defendant's prior convictions violates the defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Gomez*, 239 S.W.3d at 740.

In the case herein, Appellant's sentencing hearing was held on October 26, 2006, and his motion for new trial was filed on November 21, 2006, both after the filing of the *Gomez I* opinion. Appellant did not raise a challenge to his sentence based on the Sixth Amendment at his sentencing hearing or in his motion for new trial. Instead, Appellant raises the argument for the first time on appeal. In *Gomez I*, the court determined that the Sixth Amendment issue was waived because the defendants "did not raise this constitutional challenge at their . . . sentencing hearing or in their motions for new trial, nor did they raise it in the Court of Criminal Appeals." *Gomez*, 163 S.W.3d at 648. After the release of the court's opinion in *Gomez I*, this Court determined that a failure to raise the Sixth Amendment challenge to a sentence at the sentencing hearing results in a waiver of the issue for plenary review. *See, e.g., State v. Mickey Lee Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at *5 (Tenn. Crim. App., at Knoxville, Sept. 15, 2005), *perm. app. denied*, (Tenn. Feb. 21, 2006); *State v. Karl Blake*, No. M2004-02731-CCA-R3-CD, 2005 WL 2205877, at *5 (Tenn. Crim. App., at Nashville, Sept. 8, 2005); *State v. Billy R. Shelley*, No. E2004-00145-CCA-R3-CD, 2005 WL 1798637, at *4 (Tenn. Crim. App., at Knoxville, Jul. 29, 2005), *perm. app. denied*, (Tenn. Dec. 19, 2005). Under similar circumstances as these presented here, *Gomez II* instructed the courts of this state that waived sentencing issues regarding the application of enhancement factors in violation of the Sixth Amendment can be reviewed only via plain error review as embodied in Tennessee Rule of Criminal Procedure 52(b). *Gomez*, 239 S.W.3d at 737.

Appellate courts are advised to use plain error review sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994) (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)); *see also State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). Under plain error review, this Court will grant relief only where five prerequisites are met: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." *Bledsoe*, 226 S.W.3d at 355 (Tenn. 2007) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

In this case, we choose not to review Appellant's sentence as plain error. Even though the trial court breached a clear and unequivocal rule of law by applying enhancement factors (5), (6), and (10) to Appellant's sentence when these factors were neither admitted by Appellant nor found by a jury, we determine that review of the error is not necessary to do substantial justice. *See Gomez*, 239 S.W.3d at 740. The trial court properly utilized Appellant's prior criminal history, enhancement factor (1), to enhance his sentence to six years in incarceration. Appellant's criminal history includes convictions for driving while impaired, battery, "unlawful drug paraphernalia uses & activities," and assault. These criminal convictions are from the states of Tennessee, Georgia, Washington, and Montana. This application of this factor alone supports Appellant's sentence. This issue is without merit.

*Denial of Probation*

Appellant next claims that the trial court erred by denying him an alternative sentence. Specifically, he argues that he is "presumed to be a favorable candidate for alternative sentencing" and that the "[Appellant's] interests and the community's interests are more apropriately served by some sentence involving release whereby [Appellant] can continue to support himself and take additional positive steps in modifying his behavior and getting appropriate medical treatment." The State disagrees.

In regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal history evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6) (2006).[3] A defendant is eligible for an alternative sentence if his sentence is less than ten years. T.C.A. § 40-35-303.

In determining a defendant's suitability for a non-incarcerative sentencing alternative, the court should consider whether:

---

[3]The 2005 amendment removed the language that provided that the described offenders were presumptively eligible for alternative sentencing in the absence of evidence to the contrary and made the guidelines "advisory" in nature.

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. T.C.A. § 40-35-103(5).

Appellant herein was found guilty of a Class C felony. Thus, Appellant is a favorable candidate for alternative sentencing. However, Appellant is not entitled to a Community Corrections sentence because he committed a violent felony. *See* T.C.A. § 40-36-106(a)(3); *State v. Birge*, 792 S.W.2d 723, 724 (Tenn. Crim. App. 1990).[4]

Even though Appellant was statutorily eligible for probation, his criminal history and conduct indicate a lack of potential for rehabilitation. He blamed his actions on alcohol and denied any memory of the severe beating that he inflicted on his ex-wife. Appellant also suggested to the trial court that the victim had hurt him emotionally. Appellant also admitted to smoking marijuana on a daily basis for a period of ten years. The trial court denied probation herein to avoid depreciating the seriousness of the offense. The failure to acknowledge culpability may reflect on a defendant's potential for rehabilitation and support a finding that a period of confinement is necessary to avoid depreciating the seriousness of an offense. *State v. Gutierrez*, 5 S.W.3d 641, 647 (Tenn. 1999); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Further, Appellant showed little, if any, remorse for his actions. Lack of remorse can also be utilized by a trial court during the consideration of probation. *State v. Dowdy*, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). Appellant acknowledged that prior to sentencing he had failed to show any remorse for his actions but blamed his lack of remorse on his attorney's advice. Under these circumstances the trial court's determination that Appellant is not entitled to an alternative sentence is amply supported by the record.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

---

[4]Appellant seems to make a brief argument on appeal that he qualifies under the special needs provision to get "appropriate medical treatment." As stated previously, Appellant is ineligible for a Community Corrections sentence because he committed a violent felony. *See* T.C.A. 40-36-106(a).

_____
JERRY L. SMITH, JUDGE