UNITED STATES of America,
Plaintiff-Appellee,

v.

Gaston GERALD, Defendant-Appellant.

No. 79–5566.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1980.

Rehearing and Rehearing En Banc
Denied Oct. 9, 1980.

14. Hullum presented six witnesses who testified to his good character.

James McPherson, New Orleans, La., for defendant-appellant.

Donald L. Beckner, U. S. Atty., C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GODBOLD, SIMPSON and THOMAS A. CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant Gaston Gerald, a Louisiana State Senator, was indicted in the district court under charges of conspiracy, aiding and abetting attempted extortion, attempted extortion, and perjury. The jury returned a verdict of guilty on count II on the indictment which charged Gerald as a principal or an aider and abettor in an attempted extortion. He was acquitted of the remaining four counts. In this appeal Gerald argues: that the trial court voir dire of the pretrial publicity issue was reversibly inadequate; that the evidence was insufficient to support the jury verdict; that the trial court committed reversible error in certain jury instructions; that counts I and II of the indictment charging conspiracy and attempted extortion were multiplicitous; and that the prosecutor exceeded the bounds of permissible cross-examination of a defense character witness. We find no meritorious ground for reversal and affirm.

### FACTS

Taking the view most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), there is evidence in the record from which the following facts could be found.

Charles Carter Construction Company, a large general contracting firm located in Baton Rouge, Louisiana, constructed two large public buildings in Baton Rouge under contract with East Baton Rouge Parish. The construction was not completed by the date specified in the contract because of various complications. Consequently Charles Carter, the prime mover behind the company began to hear rumors that the City-Parish Council, the legislative body for

East Baton Rouge Parish, intended to enforce a late charge provision of the contract by assessing Carter $137,000. Under the terms of the contract the Council, by a vote of at least seven of the twelve members, had authority to assess late charges and to withhold that amount from final payment.

Several persons sought to capitalize on Carter's vulnerable position before the Council. One or more Councilmen and at least one appointed official informed Carter that the late charge would be assessed unless he paid them $25,000 to fix the vote of the Council. Carter told one member of the Council that he was considering bringing the matter to the attention of the F.B.I. Quite understandably these extortion attempts halted. Indeed, the City-Parish personnel director, Sid Lacy, who had previously propositioned Carter, would not even return Carter's telephone calls.

But there were others who perceived an opportunity for gain in Carter's dilemma with the Council. Carter informed Jack Menzie of the Lacy offer and Menzie relayed the information to appellant. At the January 11, 1978 Council meeting there were six votes in favor of assessment, one less than needed to carry the assessment. The issue was continued until the next scheduled meeting. On January 14 Carter contacted the F.B.I. and agreed to assist in apprehending the extortionists. Meanwhile Menzie and appellant Gerald met and agreed to pick up Lacy's earlier "deal". Menzie informed Carter that Lacy could not be trusted and that he, Menzie had an "acquaintance" who would procure a favorable Council vote for the same figure, $25,000. Carter agreed and gave Menzie $15,000 in earnest money for transmittal to the acquaintance. The money was to be returned if a favorable vote was not obtained. Menzie delivered the money directly to appellant. Sometime between the first Council vote and the second Council vote Gerald persuaded one Council member to change his vote to Carter's favor. But another member of the Council changed his former favorable vote causing the vote to deadlock for the second time at the January 25 meeting.

On February 3, 1978 appellant had lunch with Carter. Their conversation was covertly recorded by a body recorder that Carter was wearing. The record reveals the following conversation.

Carter informed Gerald that he had given $15,000 to Menzie for the acquaintance to fix the Council vote but Menzie had not informed him of the identity of the acquaintance. Gerald replied: that he had done everything he could to help by talking with the mayor, a councilman and several others; that Carter should go "all out" to get the assessment waived at the next Council meeting; and that Menzie could be trusted. Gerald intimated that some members of the Council were seeking $75,000 for a favorable vote and that therefore the $25,000 deal proposed by Menzie and acquaintance was a bargain.

Nevertheless at the February 8, 1978 meeting the Council voted to assess the full $137,000 in late charges. Pursuant to the money back guarantee Menzie retrieved the $15,000 from Gerald and returned it to Carter.

The F.B.I. subsequently contacted Menzie, obtained his agreement to cooperate and fitted him with a body recorder. The next taped conversation of Gerald took place outside the Senate Chamber of the Louisiana Legislature. After Menzie informed Gerald that the government was interested in the envelope containing Carter's $15,000, the following conversation ensued:

> GERALD: . . . Let's make sure that we're right . . . on our stories.
>
> *　*　*　*　*　*
>
> GERALD: Uh, . . . you called me one day and told me you could get me $25,000.00. You were going to bring something. No, you were going to bring something to see if I could get. . . . Tell me now, so we can make sure I get my story straight."
>
> *　*　*　*　*　*

GERALD: Uh, who was it. . . . Let me ask you this . . . there was somebody else talked about. . . . Bob said he was supposed to meet somebody else . . . or somebody approached Bob.

MENZIE: It's Sid Lacy. Bob told me Sid Lacy approached him to start with.

\* \* \* \* \* \*

MENZIE: Drew [Menzie's attorney] tells me that . . . that . . . that . . . ya know. . . . I got to go up there before that grand jury and tell them the truth.

GERALD: What does that mean?

\* \* \* \* \* \*

MENZIE: Well, ya know. . . . I told you. . . . I never did tell him your name. I never did tell him where the money was going to go. That . . ya know . . . and I didn't look. . . .

GERALD: Yeah, but he knew then.

Government Exhibit 14.

### PRETRIAL PUBLICITY

Appellant filed a written pretrial motion for an individual voir dire of the veniremen concerning allegedly prejudicial pretrial publicity. The magistrate ruled that the motion was premature and that decision would be postponed until trial. The trial began August 13, 1979, some six months after the motion for individual voir dire was heard by the magistrate and some eight months after the indictment was filed. The voir dire was conducted in open court in the presence of all jurors. The first statement made by the district judge and the only portion of the record that gives the slightest indication of the amount or nature of the pretrial publicity follows:

Now, are there any members of the jury who know anything about this case? There has been publicity on this case, as we all know, in the newspapers; it was reported in the news media from time to time, and I ask you how many of you have read or heard on any of the news media anything in connection with this matter?

Record vol. 2 at 11. A show of hands indicated that approximately one half of the prospective jurors had some prior knowledge of the case. Upon further questioning by the trial court one prospective juror indicated that he had formed an opinion as to Gerald's guilt and that he did not feel he could give Gerald a fair trial. He was excused. A replacement stated that he had read of the case but had not formed any opinion as to Gerald's guilt and that he could act impartially.

Immediately before counsel were allowed to exercise peremptory challenges Gerald's counsel requested that the veniremen who previously indicated prior knowledge of the case "be interrogated in greater detail to determine whether they arrived at any factual conclusions about the case." Record vol. 2 at 26. The court responded by asking the veniremen en masse whether any who had heard of the case had arrived at any factual conclusion that could not be changed by presentation of evidence to the contrary. No one indicated that he or she had arrived at such a conclusion. At the request of Gerald's counsel a second show of hands revealed that fifteen of the twenty-eight veniremen had either heard or read of the case. Following the show of hands the court further inquired whether any of the prospective jurors had formed any opinion of the guilt or innocence of Senator Gerald or of the truth or falsity of the statements they had read concerning the case. No one responded. Finally peremptory challenges were exercised. It is noteworthy that Gerald's counsel only used eight of his ten allotted challenges.

 The District Judge addressed further questions to the twelve empaneled jurors. He admonished them that their decision must be based on the evidence presented in court without regard to statements they may have heard from the newspapers or other outside sources. Again he asked if what they had heard or read might impair their ability to act impartially. After the jury left the courtroom, the district judge gave Gerald's counsel an opportunity to ex-

pand upon a naked objection interposed during the voir dire of the veniremen. Gerald's counsel requested that his requested voir dire be made a part of the record; the request was granted.[1] Defense counsel at this point stated "that it serves no useful function to argue the motion at this point." Record vol. 2 at 32. Indeed, the only clue as to the substance of the objection is a minute entry of the district judge stating that "[d]efendant's counsel objects to the jury on the grounds of pretrial publicity." Record vol. 1 at 171.

Appellant's objections to the voir dire and pretrial publicity are much more detailed before this court than before the district court. He now argues that the lower court committed reversible error by failing to conduct a probing inquiry of the specific pretrial publicity information each venireman had received and the specific impact the information might have had upon each. He further argues that the examination of each prospective juror should preferably have been conducted out of the presence of other jurors. Finally, appellant asserts that in propounding general questions as to the jurors' ability to be impartial the district judge violated the teachings of *United States v. Davis*, 583 F.2d 190 (5th Cir.1979) by delegating to each prospective juror the decision whether exposure to pretrial publicity impaired impartiality.

██ Rule 24(a) of the Federal Rules of Criminal Procedure gives the trial court broad discretion in deciding the scope and method of the jury voir dire. *See e. g. Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 851, 35 L.Ed.2d 46 (1973); *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir.1979). The court's discretion extends to the decision whether to propound questions submitted by counsel and to the decision of whether jurors should be questioned collectively or individually out of the presence of other jurors. *United States v. Shavers*, 615

F.2d 266, 268 (5th Cir.1980), *United States v. Delval, supra*, 600 F.2d at 1102. Of course the trial court's discretion in this area is limited by the demands of due process. Specifically, a criminal defendant is entitled to an impartial jury which will render a verdict based exclusively upon the evidence presented in court and not on outside sources. *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751, 756 (1961); *United States v. Davis, supra*, 583 F.2d at 197. A juror need not be totally ignorant of the case, but he must be able to decide the case exclusively on the evidence presented in court. *Id.*

██ In harmonizing the trial court's broad discretion in the conduct of the jury voir dire with the due process requirement that the jury be impartial, an appellate court must independently evaluate the voir dire testimony of the empaneled jurors, *see Irvin v. Dowd, supra*, 366 U.S. at 723, 81 S.Ct. at 1643, 6 L.Ed.2d at 756, and decide whether there is a "reasonable assurance that prejudice would be discovered if present." *United States v. Delval, supra*, 600 F.2d at 1102, *quoting, United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976). The trial court's decision will "not be lightly overturned." *United States v. Carroll*, 582 F.2d 942, 946 (5th Cir.1978) (and cases cited therein).

*United States v. Davis, supra*, surveyed the boundaries of a trial court's discretion when conducting voir dire under juror exposure to potentially prejudicial pretrial publicity. There we stated that because a juror is in a poor position to assess his own ability to be impartial after exposure to pretrial publicity, the trial court must independently decide the impartiality issue. One acceptable method of reaching the decision involves a three step process: (1) The court asks what specific information the prospective jurors have received. (2) Then

---

1. However we do not consider the requested voir dire because it can not be found in the record before us. It is appellant's responsibility to insure the inclusion in the record of all matters he intends to rely upon on appeal. Fed.R.App.P. 10(e) & 11(e); 9 J. Moore, Moore's Federal Practice §§ 210.03, 211.05. There is no indication before us as to why the requested voir dire is not in the record. Even if it were present it would not affect our decision in this appeal.

the court inquires concerning the prejudicial effect of the information. (3) Finally, the court makes an independent determination of whether the information tainted the juror's impartiality. *Id.* at 197; *United States v. Hyde*, 448 F.2d 815, 848 n. 38 (5th Cir.1971), *cert. denied*, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972). This procedure is contrasted to the sometimes unacceptable procedure of asking the veniremen point-blank whether the exposure to pretrial publicity affected their impartiality. *Id.*; cf. *United States v. Williams*, 568 F.2d 464, 471 (5th Cir.1978) (involving publicity during trial). *Davis* points out that although individual voir dire out of the presence of other jurors is not always required it is generally the preferred method. *United States v. Davis, supra*, 583 F.2d at 196–97 n. 8, 9.

■ The voir dire as to pretrial publicity in the instant case is similar to the procedure condemned in *Davis* in that it arguably allows each juror to decide whether pretrial publicity exposure has contaminated his or her ability to render an impartial verdict. However, there is a critical difference between the circumstances in *Davis* and the circumstances present here. In *Davis* there was extensive evidence in the record of potentially prejudicial pretrial publicity. This evidence enabled this court to conclude that "[u]nder the circumstances of . . . [*Davis*] where the nature of the publicity as a whole raised a significant possibility of prejudice, the cursory questioning by the court was not enough." *Id.* at 196. However, the record in the instant case is completely devoid of indicators of the nature or extent of pretrial publicity except for the unrevealing statement of the trial court to the venire:

> There has been publicity on this case, as we all know, in the newspaper; it was reported in the news media from time to time. . . .

Record vol. 2 at 11.

Appellant invites this court to infer from the above statement of the trial court that "the nature of the publicity as a whole raised a significant possibility of prejudice . . . .. [and that therefore] the cursory questioning by the court was not enough." *United States v. Davis, supra*, 583 F.2d at 196. If the inference were made then we would likely conclude that the trial court committed reversible error in not following *Davis*. However, because of the lack of evidence as to the nature of the pretrial publicity, we decline to accept appellant's invitation. There is simply no record basis for the required inference.

*United States v. Davis, supra*, held that in factual situations where the nature of certain pretrial publicity creates a "significant possibility of prejudice" a trial court commits reversible error by permitting the jurors to decide whether their ability to render an impartial verdict is impaired by exposure to the publicity. *Id.* at 196. In *United States v. Hyde, supra*, a case involving juror exposure to publicity during trial,[2] this court expressed disapproval of the trial judge's questions to the jury concerning the effects of the publicity because the questions allowed the jurors to decide the impartiality issue. *Id.* at 848 n. 38 (cited with approval in *United States v. Davis, supra*). However Hyde's conviction was not reversed because the publicity was not prejudicial. *Id.* We conclude that the same result obtains when the record before this court lacks a foundation from which we may conclude that the nature of the publicity created a significant possibility of prejudice. *See United States v. Davis, supra*, 583 F.2d at 196.

Appellant asks us to infer too much from the trial judge's cryptic acknowledgment that the case had received publicity prior to trial. Certainly some of the voir dire questions did allow the venireman to assess their own impartiality. However, we refuse to reverse on that ground because appellant failed to provide evidentiary support for his general allegations of prejudi-

---

2. Pretrial and trial publicity do not involve identical circumstances and considerations, but the court's responsibility to determine impar-

tiality of jurors is the same for both situations. *United States v. Davis, supra*, 583 F.2d at 197 n. 10.

cial pretrial publicity. *Cf. United States v. Pomponio,* 563 F.2d 659, 665 (4th Cir.1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (holding that where no specific news items are brought to the attention of the trial court general questions, addressed to the entire venire requiring each venireman to assess his ability to render a just verdict exclusively on evidence in court, are sufficient). A defense counsel must direct the trial court's attention to specific news items so the trial court can make an initial determination of whether the information is prejudicial. *Id.* For purpose of appeal, the defense counsel must see that the record reflects the nature and extent of the publicity so that the appellate court may also initially determine whether the publicity was prejudicial before determining whether the voir dire demands of *United States v. Davis, supra,* were met in the trial court. *See* note 1, *supra.* The time consuming, probing, preferably individual voir dire described in *Davis* generally is not required in cases involving unsupported general allegations of prejudicial pretrial publicity or in cases where the publicity does not create a significant potential of prejudice. *Accord, Salemme v. Ristaino,* 587 F.2d 81, 88 (1st Cir.1978); *United States v. Pomponio, supra,* 563 F.2d at 665; *United States v. Johnson,* 584 F.2d 148, 156 (6th Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469 (holding that in the absence of a "clear foundation for inquiry into juror recollection of particular prejudicial matter" the trial judge correctly refus-ed to ask questions concerning content of articles jurors may have read); *United States v. Giese,* 597 F.2d 1170, 1183 (9th Cir.1979), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (holding that in cases where pretrial publicity is not great a defendant's right to an impartial jury is adequately preserved by general questions addressed to the entire venire followed by individual questioning of jurors who respond affirmatively); *United States v. Evans,* 542 F.2d 805, 812–13 (10th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (holding that a trial court does not abuse its discretion by failing to conduct an individual voir dire and refusing to ask questions propounded by the defense if no specific incident of prejudicial publicity is cited).

█ The record does not show prejudice [3] and "[w]e refuse to [find] prejudice where none has been revealed." *Brown v. United States,* 403 F.2d 489, 491 (5th Cir.1968).

## SUFFICIENCY OF THE EVIDENCE

█ Gerald argues that the district judge should have granted his motion for judgment of acquittal based upon alleged insufficiency of the evidence. The theory upon which the government tried the case was that Gerald (and Menzie) sought to induce a $25,000 payment from Carter by exploiting Carter's fear that he would lose $137,000 by a Council vote to assess a late charge. Appellant argues that the assessment money did not belong to Carter's com-

---

**3.** Several factors suggest that the jury was impartial. Impressions and memories of whatever publicity existed had a chance to grow faint because of the lapse of approximately eight months between arraignment and trial. *See United States v. Capo,* 595 F.2d 1086 (5th Cir. 1979), *cert. denied,* 444 U.S. 1012, 100 S.Ct. 660, 62 L.Ed.2d 641 (trial began one year after the offenses occurred). Only fifteen of twenty-eight prospective jurors had heard anything about the case. *See United States v. Giese, supra* (only one half had heard of the case). *Compare United States v. Davis, supra* (every member of the venire had heard of the case).

There are even indicators that the defense did not consider the panel to be prejudiced by the alleged publicity. Only eight of a possible ten peremptory challenges were used. *See United States v. Evans, supra,* 542 F.2d at 813. There was no motion for change of venue or to dismiss the jury.

Next, we think it revealing that there was no evidence of publicity in the record and that objections in the trial below were skeletal. As stated above, the objection to the voir dire was vague and the district judge's attention was not directed to the pending motion for individual voir dire filed seven months prior to trial. One would expect considerably more effort in the trial if the defense counsel believes the jury is prejudiced by pre-trial publicity.

Finally, the jury's acquittal of Gerald as to four of the five counts submitted suggests strongly that the verdict was reached upon an open and unprejudicial consideration of the evidence, and not otherwise.

pany at the time of the extortion attempt because the Council had withheld ten percent of the total pursuant to the liquidated damages provision of the contract. Therefore, argues Gerald, Carter did not have a fear of economic loss as prohibited by the statute, he merely had a hope of an unlawful gain. This is an ingenious but meritless argument. The withheld money belonged to Carter's company even though it was not in his actual possession and even though the Council had the power to assess the penalty.

In the instant case the decisive question under 18 U.S.C. § 1951 (the Hobbs Act) is whether Gerald intended to cause Carter to pay the $25,000 by exploiting Carter's fear of economic loss. If not, then Gerald was only accepting a bribe, an offense not punishable under 18 U.S.C. § 1951. *United States v. Duhon,* 565 F.2d 345, 351 (5th Cir.1978), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802; *United States v. Hyde, supra,* 448 F.2d at 833. The fear need not have been actually caused by Gerald; the statute is satisfied if Gerald intended to exploit the fear. *Id.*

We have discussed the standard an appellate court must apply when reviewing a denial of a motion for judgment of acquittal based on insufficiency of the evidence in *United States v. Burns,* 597 F.2d 939 (5th Cir.1979). Applying this standard we conclude that the evidence was sufficient for a reasonable jury to find, beyond a reasonable doubt, that Gerald either sought to induce the $25,000 payment by exploiting Carter's fear of economic loss or that Gerald aided and abetted Menzie in such an attempt. *See United States v. Duhon, supra* ; *United States v. Hyde supra.*

Appellant's remaining arguments are of questionable merit and therefore warrant only summary discussion. All but two are raised for the first time on this appeal. Rule 52(b) of the Federal Rules of Criminal Procedure permits appellate courts to notice alleged errors which were not brought to the attention of the trial court if they constitute "plain error". Plain error is error which is "both obvious and substan-

tial". *Sykes v. United States,* 373 F.2d 607, 612 (5th Cir.1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138. There is no hard and fast rule for determining whether error is plain; the determination turns upon the facts of a particular case. *Id.* The plain error rule is not a run-of-the-mill remedy. The intention of the rule is to serve the ends of justice; therefore it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice". *Eaton v. United States,* 398 F.2d 485, 486 (5th Cir.1968), *cert. denied,* 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273.

To establish extortion under 18 U.S.C. § 1951 the government must prove the requisite effect on interstate commerce. The statute is violated if the defendant attempts an extortion which, if successful, would "in any way or degree" obstruct, delay, or affect interstate commerce or the movement of any article or commodity in commerce. *Id.* This jurisdictional interstate commerce element generally does not place a large burden on the government because even a minimal effect on interstate commerce will sustain jurisdiction under the statute. *See United States v. Summers,* 598 F.2d 450 (5th Cir.1979); *United States v. Hyde, supra,* 448 F.2d at 837.

Appellant belatedly objects to a mid-trial statement by the district judge and a portion of the jury charge, both concerning the interstate commerce issue. The government's trial theory was that Charles Carter and Company, Inc. is a large contracting firm involved in interstate commerce and that the attempted extortion would potentially affect interstate commerce by depleting the assets of the company. The district judge asked witness Carter: "In the construction of that building, did you have materials that traveled in interstate commerce, materials that were purchased outside the state?" Record, vol. 2 at 68. After Carter responded affirmatively, the judge stated: "The Court finds as a fact that interstate commerce was involved in the construction of the building in question". *Id.* at 69. Appellant argues this effect on interstate commerce occurred dur-

ing the construction phase of the contract, but the extortion attempt occurred *after* construction was completed. Therefore, argues Gerald, the court's statement allowed conviction (as to the interstate commerce issue) on a theory that was neither alleged nor sufficient under the statute.

The error, if present, is neither substantial nor obvious. Evidence abounds that the extortion attempt had at least a potential minimal effect on interstate commerce. The unchallenged evidence showed a company that was substantially involved in interstate commerce. Documentary evidence consisted of several contracts with subcontractors who were also involved in interstate commerce and invoices of material bought outside the state. Carter testified that he had numerous other projects involving interstate commerce, and that he continued in business up to the time of the trial. Although the district judge's statement appeared to take the issue of the credibility of this evidence from the jury, the record reveals the opposite. At the end of the trial the district judge correctly charged the jury that if they believed the evidence presented on this issue then the interstate commerce element was satisfied. There is no miscarriage of justice requiring invocation of the plain error rule. *See Eaton v. United States, supra.*

■ Appellant raises similar objections to a portion of the jury charge concerning the interstate commerce issue. No objection was made at trial. Rule 30 of the Federal Rules of Criminal Procedure provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." *Id.* The plain error rule must not be used to eliminate rule 30. *See Hattaway v. United States,* 416 F.2d 1178, 1181 (5th Cir.1969). In *United States v. Freeman,* 619 F.2d 1112 (5th Cir.1980), a case involving alleged error in instructions to the jury we stated:

The instruction on coconspirator declarations was not erroneous, and it clearly

was not plain error because the charge is not " 'so erroneous that when considered in the totality of the charge as a whole and the evidence presented against each appellant, the error is so great as to result in the likelihood of a grave miscarriage of justice.' " *United States v. Franklin,* 586 F.2d 560, 569 (5th Cir.1978), cert. denied, 440 U.S. 972, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979) (quoting *United States v. Smith,* 502 F.2d 1250, 1256 (5th Cir.1974)).

The charge, when viewed as a whole instead of as isolated sentences, is correct. *See United States v. Roberts,* 546 F.2d 596, 598 (5th Cir.1977), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064. There clearly is no obvious and substantial error or a miscarriage of justice. *See Eaton v. United States, supra; Sykes v. United States, supra.*

■ Appellant also argues that the trial court committed plain error in charging the jury on aiding and abetting. Although there is one isolated portion of the instruction that is potentially misleading, the charge, viewed as a whole, is correct. *See United States v. Freeman, supra; United States v. Roberts, supra.* Any confusion was immediately rectified by a correct instruction on the law. There is no plain error.

■ Gerald's next contention, also raised for the first time on appeal, is that he is entitled to reversal of his conviction because the trial court failed to require the government to elect between the allegedly multiplicitous Counts I and II. We need not reach the substance of this argument. Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that failure to raise objections to defects in the indictment before trial amounts to a waiver of the objection. There is no cause shown to warrant relief from the waiver. *See* Fed.R.Crim.P. 12(f). *Cf. United States v. Freeman, supra,* 619 F.2d at 1118 (objection that indictment lacked specificity required by the Sixth Amendment was waived by failure to object before trial).

Appellant's remaining two arguments are without merit and require no discussion. The conviction is

AFFIRMED.