IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 3, 2007

**STATE OF TENNESSEE v. MONTREAL LYONS**

**Appeal from the Criminal Court for Shelby County**
**No. 03-01051    James C. Beasley, Jr., Judge**

―――――――――――

**No. W2006-02445-CCA-R3-CD  - Filed July 9, 2008**

―――――――――――

Appellant, Montreal Lyons, was convicted by a Shelby County jury of four counts of aggravated robbery and one count of especially aggravated kidnapping.  The trial court merged the four aggravated robbery convictions into two convictions.  Appellant was sentenced as a Range I, Standard Offender to twelve years for each aggravated robbery conviction and as a Range I, Violent Offender to twenty years for the especially aggravated kidnapping conviction.  The trial court ordered the sentences to run consecutively to each other, for a total effective sentence of forty-four years.  On appeal, Appellant challenges the sufficiency of the evidence to support the especially aggravated kidnapping conviction and his sentence.  Because the evidence was sufficient to support the conviction it is affirmed.  We also find that the trial court properly ordered consecutive sentencing.  Furthermore,  Appellant's remaining challenge to his sentence has been waived and we decline to address it via plain error review.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Gerald S. Green, Memphis, Tennessee, for the Appellant, Montreal Lyons.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General, and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 14, 2002, Elisha Wilkins stayed the night at her boyfriend, Chris Winford's house.[1] Earlier that evening, Ms. Wilkins was babysitting for her boyfriend's children. Their mother came to pick them up at around 8:00 p.m. Sometime later on, Ms. Wilkins fell asleep. She woke up when she heard a knock on the back door. Ms. Wilkins looked out the window and saw a man that she did not know. The man asked her if her boyfriend, Chris, was home. She told the man that he was not home and turned to walk away. The man knocked on the door again. When Ms. Wilkins looked out the window the second time, she saw a second, taller man armed with a gun accompanying the first man. Next, the door of the house was kicked down and at least seven or eight men, including Appellant, came bursting into the house. Most of them had guns. Ms. Wilkins slid down beside the refrigerator in fear. One of the men pulled her up by the hair on her head and demanded to know where the money was in the house. Ms. Wilkins told the men she did not live there and did not know where the money was. The men told her that she should tell them where the money was because they were going to kill her anyway.

The men stayed in the house from thirty minutes to an hour. They stole Ms. Wilkins' truck, wallet, and driver's license. The men then made Ms. Wilkins leave with them in her truck. She was held at gunpoint and felt that she could not leave. Appellant told one of the other men to watch Ms. Wilkins so she would not run away. Appellant told Ms. Wilkins that she was going to die because she saw his face. Ms. Wilkins was afraid for her life; she thought that she was going to be killed. Appellant got into another car with several of the other men. The group took Ms. Wilkins to Latonya Cooper's house. Ms. Wilkins knew Mrs. Cooper through her boyfriend. She later explained that Mr. Winford and Mrs. Cooper's husband were co-owners of a bar and grill. Ms. Wilkins informed the men that Mrs. Cooper had two small children, but the men did not care. When they arrived, Appellant held a gun to Ms. Wilkins' head and told her to knock on Mrs. Cooper's door. Ms. Wilkins was so scared that she urinated on herself.

Mrs. Cooper was at home that evening with her daughters, who were five and six years old at the time. When Mrs. Cooper heard the doorbell, she asked who was at the door. Ms. Wilkins identified herself, so Mrs. Cooper opened the door. When Mrs. Cooper answered the door, the men pushed Ms. Wilkins inside and followed behind her. The men asked for jewelry and money. One of the men walked with Mrs. Cooper to her bedroom to get her purse. Appellant got upset because he thought there would be more money. Appellant threatened to kill both women and the two children. The men stayed at Mrs. Cooper's house for quite some time, looking for more money. At one point, the phone rang. Appellant told one of the other men to point his gun at Mrs. Cooper. Appellant told the man if Mrs. Cooper said something wrong on the phone, to shoot her.

---

[1] At the time of trial, Ms. Wilkins had married Chris Winford and her name was Elisha Winford. However, we will refer to her as Ms. Wilkins, as that was her name at the time of the events at issue and the name by which she was referred throughout the trial.

The men initially separated the women, putting Ms. Wilkins in the bathroom and Mrs. Cooper in her bedroom. Neither woman would talk to the men. Appellant told one of the other men that the women would "talk" if they went to get one of Mrs. Cooper's children. Eventually, both Ms. Wilkins and Mrs. Cooper were put in a bedroom together. They were later forced to lay face down on the carpet. Mrs. Cooper thought that she was going to be killed. Mrs. Cooper begged for her life, and Appellant told her to lie down or he would shoot her.

The men left after what Ms. Wilkins described as about an hour and a half. The men took Mrs. Cooper's truck, money, jewelry, DVD player, and a laptop. Mr. Cooper came home soon thereafter, and Ms. Wilkins remained at the house until Mr. Winford arrived. Ms. Wilkins and Mr. Winford returned to his house to contact the police. Ms. Wilkins gave a statement to police that night. Mrs. Cooper also gave a statement to the police.

After the incident, Mrs. Cooper went back to her house only to remove her belongings. She was so afraid and shaken after the incident that she moved immediately to a new home.

Officer Jason Long with the Shelby County Sheriff's Department responded to Mrs. Cooper's residence. When he got there, the house was in disarray. Another officer, John Chevalier with the Memphis Police Department, responded to Ms. Wilkins' residence. The back door of the residence had been kicked in, and the inside of the house appeared to have been ransacked and vandalized. There was an outside storage compartment that also appeared to have sustained damage. Ms. Wilkins was visibly upset.

A few days after the incident, Ms. Wilkins identified one of the suspects, Mario Morris, from a photographic lineup. In June of 2002, Ms. Wilkins saw one of the perpetrators, Khalfani Marion, at the Greyhound bus station. She contacted a security guard, who called the police. In September of 2002, Ms. Wilkins was able to identify Appellant from a photographic lineup as one of the men responsible for the incident. She and Mrs. Cooper both told the police about a large scar that was on Appellant's neck that was not visible in the identifying photographs.

Appellant, along with three other men, was indicted by the Shelby County Grand Jury in January of 2003 for four counts of aggravated robbery and one count of especially aggravated kidnapping. At trial, both Ms. Wilkins and Mrs. Cooper positively identified the three defendants on trial – Appellant, Mario Morris, and Khalfani Marion. Each of the defendants elected not to testify and rested their cases without presenting any proof. After the conclusion of the jury trial, a Shelby County Jury convicted Appellant of aggravated robbery in Counts 1, 2, 4 and 5. The jury also found Appellant guilty of especially aggravated kidnapping in Count 3.

Subsequently, at a sentencing hearing, the trial court merged Counts 1 and 2 into one conviction for aggravated robbery[2] and merged Counts 4 and 5 into one conviction for aggravated robbery. The trial court sentenced Appellant to twelve years for each aggravated robbery

---

[2]The judgment form for Count 1 does not appear in the record. The judgment form for Count 2 states that "Count 2 is merged into Count 1."

conviction.[3]  Appellant was sentenced to twenty years as a Range I, Violent Offender for the especially aggravated kidnapping conviction.  The trial court ordered all of the sentences to run consecutively.

Subsequently, Appellant filed a motion for new trial in which he argued that the trial court erred in denying the motion for judgment of acquittal and that the evidence was insufficient to support his conviction for especially aggravated kidnapping.  The trial court denied the motion for new trial, and Appellant filed a timely notice of appeal.

*Analysis*
*Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence of the especially aggravated kidnapping conviction on appeal.  Specifically, he argues that his conviction for especially aggravated kidnapping is "infirm" and "must be modified to facilitation to commit aggravated kidnapping since [his] actions only made it possible for the many other actors to commit aggravated kidnapping and [he] was only one player among many."  Appellant also argues that there were some "inconsistencies in the victim's testimony."  The State contends that Appellant has waived the issue by failing to cite to the record.  In the alternative, the State argues that the evidence was more than sufficient to convict Appellant of especially aggravated kidnapping.

At the outset, we note that Appellant has failed to make any citation to the record in his brief.  Ordinarily, this issue would be waived.  *See* Tenn. Ct. Crim. App. R. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court").  Despite these deficiencies, we will address Appellant's issue on the merits.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles.  A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State.  *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt."  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.  *Id.*  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75.  In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may

---

[3]The judgment form for Count 2 indicates that Appellant was sentenced as a Range I, Standard Offender with a 30% release eligibility date.  The judgment forms for Counts 4 and 5 do not indicate Appellant's Offender Status or Release Eligibility.

be drawn therefrom." *Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Especially aggravated kidnapping is defined as false imprisonment or "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty," T.C.A. § 39-13-302(a), "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-305(a)(1). "Deadly weapon" means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." T.C.A. § 39-11-106(a)(5).

Viewing the evidence in the light most favorable to the State, the evidence is sufficient to support Appellant's conviction for especially aggravated kidnapping. Ms. Wilkins testified that Appellant, along with several other men, came to her boyfriend's house with a gun. After kicking in the backdoor and ransacking the house, Appellant and the other men forced Ms. Wilkins at gunpoint to come with them in a car to Mrs. Cooper's house. Appellant told the other men to watch Ms. Wilkins so she would not run away. He also told her she was going to die because she had seen his face. Ms. Wilkins was so scared that she urinated on herself. It is clear that Appellant's actions went far beyond those of a mere facilitator and that Appellant was a principal actor in Ms. Wilkins' abduction. The jury obviously accredited Ms. Wikins' testimony. The evidence was sufficient to support the conviction. This issue has no merit.

*Sentencing*

Next, Appellant challenges his sentence. Specifically, he argues that the trial court abused its discretion by ordering the sentences to be served consecutively. Further, Appellant makes an argument that the application of enhancement factor (21), that Appellant had committed a delinquent act as a juvenile that would constitute a felony if committed as an adult, was applied in contravention of *Blakely v. Washington*, 542 U.S. 296 (2004). Appellant makes no argument as to whether the trial court utilized the pre- or post-2005 version of the sentencing act to determine his sentence. Furthermore, Appellant does not contend that the trial court erred in its sentencing determination that an enhanced sentence was justified based solely on Appellant's prior criminal history. The State again argues that Appellant has waived the issue by failing to cite to the record. In the alternative, the State contends that the trial court properly ordered consecutive sentencing based on Appellant's status as a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115 (b)(4).

*Consecutive Sentencing*

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists.[4] One of the provisions allowing consecutive sentencing provides that consecutive sentencing is warranted if the defendant is a dangerous offender whose behavior exhibits little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. T.C.A. § 40-35-115(b)(4). Additionally, whether sentences are to be served concurrently or consecutively is a matter entrusted to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

If the trial court rests its determination of consecutive sentencing on the basis of a defendant's status as a "dangerous offender," the court must make two additional findings, as required by *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *Wilkerson*, 905 S.W.2d at 939. The trial court herein considered the applicable statutes and case law, including the required *Wilkerson* factors, prior to making the following findings:

> The Court has already found and will reiterate the fact that . . . the circumstances surrounding the commission of these offenses was aggravated. The Court also finds that the aggregate length of the sentences reasonably relate[s] to the offense for which [Appellant] stands convicted and also the Court finds that confinement for an extended period of time is necessary to protect society from [Appellant's] unwillingness to lead a productive life and [Appellant's] resort to criminal activity in furtherance of an anti-societal lifestyle.
>
> This Court finds that there is absolutely nothing to indicate that any of these three defendants has done anything that indicates anything other than an anti-societal lifestyle[;] . . . that they have . . . resorted to this criminal activity in furtherance of their lifestyle[;] that this is an aggravated crime, a series of crimes is very aggravated as previously outlined by the Court and that the length of sentence imposed does in fact relate to the serious nature of this offense.
>
> The Court feels that each of these three individuals is a very dangerous offender to our society, a dangerous offender within our community. The very nature

---

[4]Our supreme court has specifically noted that *Blakely v. Washington*, 542 U.S. 296 (2004), did not impact Tennessee's consecutive sentencing scheme. *State v. Anthony Allen,* ___ S.W.3d ___, 2008 WL 2497001, (Tenn. 2008); *State v. Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004). In addition, this Court has consistently found that *Blakely* does not affect consecutive sentencing determinations. *See State v. Earice Roberts*, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *15 (Tenn. Crim. App., at Jackson, Nov. 23, 2004), *perm. app. denied*, (Tenn. Mar. 21, 2005); *State v. Lawrence Warren Pierce*, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at *16 (Tenn. Crim. App., at Nashville, Nov. 9, 2004), *perm. app. denied*, (Tenn. Feb. 28, 2005).

of these crimes, the very manner in which they were carried out wreaked terror and havoc within our community.

Based on our review of the record, we conclude that the evidence does not preponderate against the trial court's findings. These men's actions were despicable and horrifying, not only to the women involved and Mrs. Cooper's two young children, but arguably to the community at large. This issue has no merit.

*Sentence*

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).[5]

In the case herein, Appellant was convicted of two counts of aggravated robbery and one count of especially aggravated kidnapping. In sentencing Appellant for especially aggravated kidnapping, the trial court determined that Appellant had a previous history of criminal convictions

---

[5]In response to *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee Legislature amended Tennessee Code Annotated section 40-35-210. These amendments became effective on June 7, 2005. The legislature also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. In addition, if a defendant committed a criminal offense on or after July 1, 1982 and was sentenced after June 7, 2005, such defendant can elect to be sentenced under these provisions by executing a waiver of their ex post facto protections. *Id*. Appellant herein committed the offenses on May 14, 2002, and was sentenced on September 14, 2006. There is no waiver executed by Appellant in the record herein. Thus, the amendment to Tennessee Code Annotated section 40-35-210 does not apply to Appellant.

in addition to those necessary to establish the range; that Appellant was a leader in the commission of the offense involving two or more criminal actors; that Appellant has a previous history of an unwillingness to comply with the conditions of a sentence involving release into the community; and that Appellant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. *See* T.C.A. § 40-35-114(2), (3), (9), & (21). In sentencing Appellant for aggravated robbery, the trial court determined that Appellant had a previous history of criminal convictions in addition to those necessary to establish the range; Appellant was a leader in the commission of the offense involving two or more criminal actors; Appellant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense; Appellant had a previous history of an unwillingness to comply with the conditions of a sentence involving release into the community; Appellant had no hesitation about committing a crime when the risk to human life was high; and that Appellant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. *See* T.C.A. § 40-35-114(2), (3), (6), (9), (11), & (21). The trial court found that no mitigating factors applied to Appellant.

Recently, in response to *Cunningham v. California*, 549 U.S. ___, 127 S.Ct. 856 (2007), the Tennessee Supreme Court issued an opinion on remand from the United States Supreme Court in *State v. Gomez*, 239 S.W.3d 733, 737 (Tenn. 2007) ("*Gomez II*") that affects our review of sentencing issues, specifically as to the application of enhancement factors to determine a defendant's sentence. On initial review of the issues in *State v. Gomez*, 163 S.W.3d 632, 650 (Tenn. 2005) ("*Gomez I*"), which was filed on April 15, 2005, the court concluded that the defendants were limited to plain error review of their sentencing claims regarding the Sixth Amendment due to their failure to preserve the issues for plenary review. In *Gomez II*, the court adhered to its decision that the defendants had waived plenary appellate review of their sentencing claims, but determined that in light of the *Cunningham* decision, a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than the defendant's prior convictions violates the defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Gomez*, 239 S.W.3d at 740.

In the case herein, Appellant's sentencing hearing was held on September 14, 2006, and his motion for new trial was filed on October 12, 2006, both after the filing of the *Gomez I* opinion. Appellant did not raise a challenge to his sentence based on the Sixth Amendment at his sentencing hearing or in his motion for new trial. Instead, Appellant makes a blanket argument on appeal that the trial court improperly applied enhancement factor (21) to his convictions because "juvenile adjudications . . . differ fundamentally from criminal convictions" and juvenile convictions "do not qualify as prior convictions under the rule established in *Apprendi* and *Blakely*." In *Gomez I*, the court determined that the Sixth Amendment issue was waived because the defendants "did not raise this constitutional challenge at their . . . sentencing hearing or in their motions for new trial, nor did they raise it in the Court of Criminal Appeals." *Gomez*, 163 S.W.3d at 648. After the release of the court's opinion in *Gomez I*, this Court determined that a failure to raise the Sixth Amendment challenge to a sentence at the sentencing hearing results in a waiver of the issue for plenary review. *See, e.g., State v. Mickey Lee Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at *5 (Tenn. Crim. App., at Knoxville, Sept. 15, 2005), *perm. app. denied*, (Tenn. Feb. 21, 2006); *State v. Karl Blake*, No. M2004-02731-CCA-R3-CD, 2005 WL 2205877, at *5 (Tenn. Crim. App., at

Nashville, Sept. 8, 2005); *State v. Billy R. Shelley*, No. E2004-00145-CCA-R3-CD, 2005 WL 1798637, at *4 (Tenn. Crim. App., at Knoxville, Jul. 29, 2005), *perm. app. denied*, (Tenn. Dec. 19, 2005). Under similar circumstances as these presented here, *Gomez II* instructed the courts of this state that waived sentencing issues regarding the application of enhancement factors in violation of the Sixth Amendment can be reviewed only via plain error review as embodied in Tennessee Rule of Criminal Procedure 52(b). *Gomez*, 239 S.W.3d at 737.

Appellate courts are advised to use plain error review sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994) (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)); *see also State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). In this case, therefore, we choose not to review Appellant's sentence via plain error. Appellant makes no claim that his sentence violates his right to a jury trial. Further, Appellant fails to accompany his blanket complaints about his sentence with citation to the record. As stated previously, Tennessee Court of Criminal Appeals Rule 10(b) states that, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257, 260-61 (Tenn. Crim. App. 1992). Furthermore, even if we were to review Appellant's sentencing claim via plain error review, Appellant's previous criminal convictions justified the enhancement of his sentence. The transcript of the sentencing hearing indicates that Appellant had an extensive criminal history, including, in addition to his juvenile convictions, one conviction for indecent exposure, two convictions for assault, two convictions for possessing a weapon, one conviction for driving on a revoked license, and one conviction for violation of probation. This issue is waived.

*Conclusion*

For the foregoing reasons, we conclude that the evidence was sufficient to sustain Appellant's conviction and that the trial court did not err in its imposition of consecutive sentencing. Further, we determine that Appellant is not entitled to a plain error review of his sentence. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE