# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs May 21, 2013

## STATE OF TENNESSEE v. JUSTIN E. STINNETT

**Appeal from the Circuit Court for Sevier County**
**No. 17022-II Richard R. Vance, Judge**

---

**No. E2012-02289-CCA-R3-CD - Filed June 19, 2013**

---

The Defendant-Appellant, Justin E. Stinnett, appeals from the Sevier County Circuit Court's order revoking his probation. Stinnett previously entered a guilty plea to robbery and received a ten-year suspended sentence after service of one year "day for day." On appeal, Stinnett argues that the trial court erred in revoking his probation. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

James R. Hickman, Jr., Sevierville, Tennessee, for the Defendant-Appellant, Justin E. Stinnett.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General, James B. Dunn, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On June 26, 2012, Stinnett pled guilty to robbery and received a ten-year suspended sentence after service of one year "day for day." Ten days after he pled guilty, on July16, 2012, a probation violation warrant was issued, charging Stinnett "with Vandalism Over $500 on 07/06/12 after he willfully caused damage to the toilet in Segregation Cell 163 at the Sevier County Jail."

At the October 9, 2012 revocation hearing, Lieutenant Andrew Loveday, a supervisor at the Sevier County jail, testified that Stinnett was placed in a segregation cell on July 6,

2012. Lieutenant Loveday said that while Stinnett was in the segregation cell Stinnett "intentionally jammed pieces of metal into . . . the commode . . . causing the commode not to be able to flush." A contractor was called to repair the commode and removed pieces of metal from the toilet. Lieutenant Loveday observed the metal pieces and said that the contractor told him they were "from the top of a Bic lighter and/or ink pen." Photographs of the metal items were entered as exhibits, and Lieutenant Loveday said inmates are not allowed to possess these items.

On cross-examination, Lieutenant Loveday agreed that he was not the officer who moved Stinnett into or out of the segregation cell. He did not personally examine the toilet before it was repaired, but he personally examined the material that was removed from it.

Officer Steven Ogle of the Sevier County Jail performed a "cell check" prior to Stinnett entering segregation cell M163. He explained that a cell check is a type of inspection performed to ensure that "all the toiletries and stuff function . . . toilets flush and stuff of that nature." Officer Ogle testified that he inspected cell M163 prior to Stinnett entering it. He used a cell check list, dated July 3, 2012, to confirm that everything was functioning in cell M163 when the previous inmate left. The cell check list, admitted into evidence, had four columns: incoming, outgoing, damaged, and missing. The incoming column showed that there were no problems with the segregation cell or its toilet when the previous inmate entered the cell. The outgoing column showed there was no damage to the segregation cell when the previous inmate left. Officer Ogle and the previous inmate signed the cell check list, admitted as an exhibit, acknowledging the same.

On July 6, 2012, Officer Ogle used the same type of cell check list to inspect cell M163 prior to Stinnett's placement in the cell. The incoming column of the cell check list showed that there were no problems with the segregation cell or its toilet before Stinnett moved in. Officer Ogle observed Stinnett sign the checklist, acknowledging that everything in the cell was working upon entry. Another officer performed the cell check when Stinnett exited the cell. The outgoing column of the cell check list shows that the commode "won't flush." Stinnett refused to sign the outgoing check list when he exited the segregation cell.

David Schlang was contacted by Lieutenant Loveday to investigate why the toilet in segregated cell 163 was not working. Schlang testified that he checked the toilet, and it would not flush. He said he "had to crawl underneath the tower into a very precarious area and start disassembling the toilet assembly." He discovered that the toilet would not flush because metal and pieces of a comb had been jammed into the toilet, causing the "button [to be] completely retracted inside of the housing." He said it was not possible for the toilet to work for a while after being jammed like that; therefore, it was not possible that someone

occupying that cell before Stinnett had jammed the toilet. Parts and labor to repair that toilet totaled $411.00.

Stinnett testified that on July 6, he was moved to the solitary cell "early, 7:15 or 6:15, 6:30." He did not recall the officers testing the toilet before he moved into the cell. He said that the officers did not perform the tests, that the signature on the incoming check list was not his signature, and that he refused to sign the sheet. He said he used the toilet in the segregated cell once, and it did not work.

On cross-examination, Stinnett acknowledged his convictions for theft, sale of methadone, and robbery. He denied knowing what happened to the toilet in the previous cell to which he was assigned. He did not recall having access to pens or lighters or other contraband. He said he was moved to the segregated cell because the toilet in the previous cell did not work, and he defecated in a trash bag and threw the contents around. He said he was not in the segregated cell when it was checked, and he refused to sign the outgoing check list.

On redirect examination, Stinnett said from the time the officer woke him in his previous cell, he stayed in that officer's sight. He removed his regular uniform and put on the other uniform in the segregated cell. He said he was in the solitary cell for eight or nine hours without a working toilet. Stinnett said he "cut [him]self to get put on suicide watch for them to move [him] out of segregation." He said Officer Jimmy Ogle moved him to suicide watch. On re-cross examination, Stinnett said he cut himself with a "piece off a Bic lighter." He agreed he had access to this piece of a Bic lighter, but he said he gave it to Officer Ogle.

Officer Steven Ogle was recalled by the State as a rebuttal witness. He said when inmates are moved from the regular unit to the segregation unit, they are allowed to take their sleeping mat with them. He said pieces of metal were found inside Stinnett's mat. He said "[t]here was a tear in the mat and that's where the pieces were found."

The court found Stinnett guilty of violating his probation and noted he had seven previous probation violations in that court and had "committed other criminal offenses while on probation." The court further found Stinnett had an "extremely high risk for re-offending" and ordered him to serve his sentence. This appeal followed.

ANALYSIS

In this appeal, Stinnett contends that the trial court erred in allowing Officer Ogle to testify that Stinnett had been removed from the "solitary cell [M163]" because he did not

have personal knowledge of the event. He concedes that he failed to object to this testimony at the revocation hearing and maintains that it constitutes plain error. Stinnett claims that without Officer Ogle's testimony, there was insufficient evidence to support the violation of probation. The State responds that Stinnett waived this issue by failing to object at trial and has failed to demonstrate plain error. The State asserts the proof at the hearing showed that Stinnett violated his probation, and the trial court did not abuse its discretion. We agree with the State.

A trial court's decision to revoke a defendant's probation is reviewed for an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). In order to establish an abuse of discretion, the defendant must show "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

> A new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation, however a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation. A revocation on this basis requires the State to 'produce evidence in the usual form of testimony' in order to establish the probationer's commission of another offense while on probation.

State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (citations omitted).

The strict rules of evidence do not apply in a probation revocation hearing. Barker v. State, 483 S.W.2d 586, 589 (Tenn. Crim. App.1972). "Reliable hearsay" is admissible in a probation revocation hearing so long as the opposing party has a fair opportunity to rebut the evidence. T.C.A. § 40-35-209(b). A witness must have the requisite personal knowledge to testify. Tenn. R. Evid. 602. With some exceptions not applicable here, "[t]he personal knowledge rule of Rule 602 provides that . . . a witness is not competent to testify about facts unless the witness personally perceived those facts by use of the witness's five senses." Neil P. Cohen, et al., Tennessee Law of Evidence § 602.1 at 2 & 3.

Finally, a defendant must timely object to an evidentiary ruling in order to preserve the issue for appeal. Tenn. R. Evid. 103(a); see State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (holding that a failure to object to otherwise inadmissible evidence renders the evidence admissible). The record shows Stinnett failed to object to any of Officer Ogle's testimony based on hearsay. Because of the waiver, we are left to review this issue under a

plain error analysis. See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). In State v. Adkisson, this Court stated that in order for an error to be considered plain:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted). All five factors must be shown, and it is not necessary to consider every factor if it is obvious that one of the factors cannot be established. State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000). "'The plain error rule is not a run-of-the-mill remedy. The intention of the rule is to serve the ends of justice; therefore it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice."'" Adkisson, 899 S.W.2d at 639 (quoting United States v. Gerald, 624 F.2d 1291, 1299 (5th Cir. 1980)). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing U.S. v. Olano, 507 U.S. 725, 734 (1993)).

The record in this case established that Officer Ogle performed the cell check for the inmate who was exiting segregated cell M163 as well as the cell check immediately prior to Stinnett entering cell M163. At that time, there was no damage to cell M163. When asked if he inspected cell M163 when Stinnett left, Officer Ogle said he was off that day and another officer inspected the cell. Our review of the record shows that Officer Ogle did not testify as to what occurred when Stinnett was checked out of cell M163 or to the condition of the cell. Officer Ogle read the cell checklist upon which another officer noted that the toilet in cell M163 "won't flush." Before the cell checklist was admitted as an exhibit, Officer Ogle testified generally that this type of check list is used each time someone is placed in a segregated cell to ensure the condition of the cell at that time. The cell check list, in our view, satisfied the business record exception to the hearsay rule under Tennessee Rule of Evidence 803(6).[1]

---

[1] Rule 803(6) of the Tennessee Rules of Evidence states:

> A memorandum, report, record, or data compilation in any form of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information

(continued...)

Even without the cell check list, Stinnett has not established that a substantial right was adversely affected, that he did not waive the issue for tactical reasons, or that consideration of the error is necessary to do substantial justice. See Adkisson, 899 S.W.2d at 641-42. This Court has stated that plain error "must be of such a great magnitude that it probably changed the outcome of the trial." Id. at 642 (citing United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988) ("[T]here is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed.")). There was more than sufficient proof to establish that Stinnett vandalized the toilet in cell M163. Accordingly, we conclude that any error in allowing Officer Ogle's testimony or the admission of the cell check list did not affect the outcome of the trial. Stinnett has failed to demonstrate plain error and is not entitled to relief.

We additionally conclude that the trial court properly revoked Stinnett's probation based on the commission of an additional criminal offense. David Schlang said the toilet in segregated cell M163 was not functioning because metal pieces, including those of a Bic lighter, were stuffed in them. Officer Ogle testified that he performed a cell check before Stinnett moved into the segregated cell, that the toilet was in working order then, and that he watched Stinnett sign the incoming checklist showing everything was working when he arrived. The officers testified that Stinnett was alone in M163, which had a broken toilet, that Stinnett was allowed to take his sleeping mat with him into the solitary cell, and that when he was removed from M163, a tear in his mat was discovered with pieces of metal inside. Stinnett testified that while in the solitary cell, he cut himself with a Bic lighter to be removed to suicide watch. The trial court commented that the standard of proof for a probation violation was probable cause but that it found a jury would not have "any difficulty in finding Mr. Stinnett guilty beyond a reasonable doubt," even under the standard of "exclud[ing] every other reasonable hypothesis." The record supports the determination of the trial court. Stinnett is not entitled to relief.

CONCLUSION

---

[1](...continued)
transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

After a thorough review, we affirm the judgment of the Sevier County Circuit Court.


_____
CAMILLE R. McMULLEN, JUDGE